**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  19-62342-CV-UNGARO/HUNT**

BROOK SNYDER and RYAN TERRY, on
behalf of themselves, and all others similarly
situated,

      Plaintiffs,

vs.

GREEN ROADS OF FLORIDA LLC,

      Defendant.

_____/

**DEFENDANT GREEN ROADS OF FLORIDA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY OF ARGUMENT ................................................................. 1

II.     PLAINTIFFS' ALLEGATIONS. ............................................................ 3

III.    LEGAL STANDARD. ............................................................................ 3

        A.      Federal Rule of Civil Procedure 12(b)(1). .............................. 3

        B.      Federal Rule of Civil Procedure 12(b)(6). .............................. 3

IV.     PLAINTIFFS LACK STANDING. ......................................................... 4

        A.      Plaintiffs Lack Actual Injury and Standing To Sue. ............... 4

        B.      Plaintiffs Lack Standing to Sue For Products They Did Not Purchase. ................. 5

        C.      Plaintiffs Lack Standing To Seek Injunctive Relief. ............... 6

        D.      Plaintiffs Lack Standing Because Snyder Did Not Purchase Online. ................... 7

V.      THE COMPLAINT FAILS TO STATE A CLAIM. ............................... 7

        A.      The FDUTPA's Safe Harbor. .................................................. 7

        B.      Pre-Emption Under The Nutrition Labeling & Education Act. ............................ 8

        C.      Plaintiff's FDUTPA Claim Falls Under The 80% Safe Harbor. ......................... 9

                1.      CBD Is A Dietary Ingredient Because It Is A Botanical or Herb. .............. 9

                2.      CBD Is A Naturally-Occurring (Indigenous) Class II Nutrient. ............... 10

                3.      Naturally Occurring Nutrients Have An 80% Safe Harbor. ..................... 10

                4.      The Drug Exception Does Not Apply To This CBD Extract. ................... 12

        D.      Plaintiff Snyder's FDUTPA Claim Fails Independently. ...................................... 13

                1.      Plaintiff Fails to Allege Deception to a Reasonable Consumer. ............... 13

                2.      Plaintiff Does Not—And Cannot—Allege Actual Damages. ................... 14

        E.      Plaintiffs' Unjust Enrichment Claim Fails To State A Claim. .............................. 15

VI.     THE COURT SHOULD STAY THIS CASE PENDING IMPENDING ADMINISTRATIVE GUIDANCE. .................................................. 16

        A.      The Forthcoming CBD Regulation and Guidance. ............................................... 16

        B.      All Factors Weigh in Favor of Staying this Action. ............................................. 18

VII.    CONCLUSION ........................................................................................ 20

ACTIVE 46437036v12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accord, Restrepo v. Wells Fargo Bank, N.A.*,
  No. 09-22436-CIV, 2010 WL 374771 (S.D. Fla. Feb. 3, 2010) ...........................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................4, 13

*ATA-CIF, LLC v. IECUBED, LLC*,
  No. 8:11-cv-603-T-33EAJ, 2011 WL 6217508 (M.D. Fla. Dec. 14, 2011) ...........................15

*Beach TV Cable Co., Inc. v. Comcast of Fla./Ga.*,
  808 F.3d 1284 (11th Cir. 2015) ...........................................................................................19

*Birmingham v. Walgreen*,
  2014 WL 12479929 (S.D. Fla. Jan. 7, 2014) ........................................................................9

*Bondhus v. Henry Schein*,
  No. 14-22982-CIV, 2015 WL 1968841 (S.D. Fla. Apr. 30, 2015)........................................18

*Butler v. Morgan*,
  562 Fed. App'x 832 (11th Cir. 2014) ...................................................................................3

*Casey v. Fla. Coastal Sch. Of Law, Inc*.,
  2015 U.S. Dist. LEXIS 176281(M.D. Fla. Aug. 11, 2015),
  *report adopted*, 2015 U.S. Dist. LEXIS 176284 (M.D. Fla. Sept. 28, 2015) ..................13, 14

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)..............................................................................................................6

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)............................................................................................................6

*Clinton v. Jones*,
  520 U.S. 681 (1997)..........................................................................................................16

*Coatney v. Synchrony Bank*,
  No. 6:16-cv-389, 2016 WL 4506315 (M.D. Fla. Aug. 2, 2016)......................................18, 19

*Comp. Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*,
  No. 16-cv-80967, 2017 WL 4868185 (S.D. Fla. Oct. 6, 2017) ......................................18, 19

*Cone Corp. v. Fla. Dep't of Transp.*,
  921 F.2d 1190 (11th Cir. 1991) ...........................................................................................7

*Cypress Bend IV Condo. Ass'n, Inc. v. Allstate Ins. Co.*,
  No. 10-60317-CIV, 2010 WL 115976696 (S.D. Fla. May 4, 2010)......................................14

*De Lara v. RB Miami Beach, LLC*,
  No. 1:18-cv-23229, 2019 U.S. Dist. LEXIS 68721 (S.D. Fla. Apr. 22, 2019)
  (Ungaro, J.) ........................................................................................................................6

ACTIVE 46437036v12

*DeBernardis v. IQ Formulations,*
  LLC, No. 17-cv-21562, 2018 WL 1536608 (S.D. Fla. Mar. 29, 2018), *appeal argued*, No. 18-11778 (11th Cir. Feb. 14, 2019) ........................................................5

*Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc*.,
  No. 15-81062-CIV, 2016 WL 4256916 (S.D. Fla. May 16, 2016)..........................................14

*Doss v. Gen. Mills, Inc*.,
  No. 18-61924, 2019 U.S. Dist. LEXIS 100791 (S.D. Fla. Jun. 14, 2019)................................5

*Elend v. Basham,*
  471 F.3d 1199 (11th Cir. 2007) ...............................................................................................6

*Emory v. Peeler*,
  756 F.2d 1547 (11th Cir. 1985) ...............................................................................................6

*In re Fla. Cement & Concrete Antitrust Litig.*,
  746 F. Supp. 2d 1291 (S.D. Fla. 2010) ...........................................................................13, 14

*Flo-Sun, Inc. v. Kirk*,
  783 So. 2d 1029 (Fla. 2001)....................................................................................................16

*Gaddis v. Just Brands USA, Inc., et al*,
  No. 0:19-cv-62067-RS (S.D. Fla. Aug. 16, 2019) .................................................................19

*Garrison v. Whole Foods Market Group, Inc.*,
  No. 13-05222-CV, 2014 WL 2451290 (N.D. Cal. June 2, 2014)...........................................16

*Greenfield v. Yucatan Foods, L.P.*,
  18 F. Supp. 3d 1371 (S.D. Fla. 2014) ..............................................................................16, 19

*Gubala v. CVS Pharm*.,
  No. 14-C-9039, 2016 U.S. Dist. LEXIS 32759 (N.D. Ill. Mar. 15, 2016).............................11

*Guerrero v. Target*,
  889 F. Supp. 2d 1348 (S.D. Fla. 2012) ..................................................................................15

*Herazo v. Whole Foods Mkt.*,
  No. 14-61909, 2015 U.S. Dist. LEXIS 96811 (S.D. Fla. Jul. 24, 2015)......................7, 16, 20

*Higgens v. Trident Asset Mgmt.*, LLC,
  No. 16-24035-Civ, 2017 WL 1230537 (S.D. Fla. Mar. 28, 2017) ...........................................5

*Horn v. Medical Marijuana, Inc*.,
  383 F. Supp. 3d 114 (W.D.N.Y. 2019) ....................................................................................9

*Horsley v. Feldt*,
  304 F.3d 1125 (11th Cir. 2002) .............................................................................................14

*Houston v. Marod Supermarkets, Inc*.,
  733 F.3d 1323 (11th Cir. 2013) ...............................................................................................6

*Jones v. Select Portfolio Serv., Inc.*,
  No. 1:18-cv-20389, 2018 U.S. Dist. LEXIS 75886 (S.D. Fla. May 2, 2018)
  (Ungaro, J.) ......................................................................................................................4, 14

iii

*Kawa Orthodontics, LLP v. Lew*,
    No. 13-80990-CIV, 2014 WL 12489601 (S.D. Fla. Jan. 13, 2014)..........................5

*Kirchner v. Ocwen Loan Servicing, LLC*,
    257 F. Supp. 3d 1314 (S.D. Fla. 2017) ..........................................................15

*Koski v. Carrier*,
    347 F. Supp. 3d 1185 (S.D. Fla. 2017) ..........................................................15

*Kuenzig v. Hormel Foods Corp.*,
    No. 12-11180, 505 Fed. Appx 937 (11th Cir. 2013).......................................8

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..........................................................................................16

*Leader Global Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*,
    155 F. Supp. 3d 1310 (S.D. Fla. 2016) (Ungaro, J.)......................................15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................4

*Malowney v. Fed. Collection Deposit Grp.*,
    193 F.3d 1342 (11th Cir. 1999) ........................................................................7

*Mantz v. TRS Recovery Servs., Inc.*,
    No. 12-81039-CIV, 2012 WL 12897159 (S.D. Fla. Oct. 30, 2012) ...............14

*Mesa v. Law Enf't Sys.*,
    No. 15-21089-CIV, 2015 WL 12804525 (S.D. Fla. Aug. 4, 2015) ................14

*Morrison v. Amway Corp.*,
    323 F.3d 920 (11th Cir. 2003) ..........................................................................3

*Nicklaw v. Citimortgage, Inc.*,
    839 F.3d 998 (11th Cir. 2016) ..........................................................................5

*Ohio State Troopers Ass'n v. Point Blank Enters.*,
    347 F. Supp. 3d 1207 (S.D. Fla. 2018) (Ungaro, J.)..............................4, 5, 6

*Orkin Exterm. Co., Inc. v. FTC*,
    849 F.2d 1354 (11th Cir. 1988) ......................................................................13

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) ........................................................................3

*Phelps v. Hormel Foods Corp.*,
    244 F. Supp. 3d 1312 (S.D. Fla. 2017) ............................................................8

*Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*,
    No. 6:19-CV-196-Orl-31DCI, 2019 WL 2567971 (M.D. Fla. Jun. 21, 2019) .........6

*Potter v. Potnetwork Holdings, Inc., et al*,
    No. 1:19-cv-24017-RNS (S.D. Fla. Sept. 27, 2019) ......................................19

*Prado-Steinman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ........................................................................4

iv

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ............................................................8, 15

*QSGI, Inc. v. IBM Glob. Fin.*,
    No. 11-80880-CIV, 2012 WL 1150402 (S.D. Fla. Mar. 14, 2012) .........................14

*Reilly v. Amy's Kitchen, Inc.*,
    2 F. Supp. 3d 1300 (S.D. Fla. Mar. 7, 2014)............................................................7

*Saleh v. Me Bath Spa Experience, LLC*,
    No. 17-cv-62322, 2018 WL 398325 (S.D. Fla. Jan. 12, 2018)...............................16

*Salters v. Beam Suntory*,
    No. 4:14cv659-RH/CAS, 2015 U.S. Dist. LEXIS 62146 (N.D. Fla. May 1,
    2015) ......................................................................................................................14

*Sanchez-Knutson v. Ford Motor Co.*,
    No. 14-61344-CIV, 2015 U.S. Dist. LEXIS 181103 (S.D. Fla. Jul. 22, 2015) ........6

*Savalli v. Gerber Prods. Co.*,
    No. 15-61554, 2016 U.S. Dist. LEXIS 138014 (S.D. Fla. Sept. 20, 2016) ....................8, 9, 14

*Simpson v. Sanderson Farms, Inc.*,
    744 F.3d 702 (11th Cir. 2014) .................................................................................4

*Skybolt Aeromotive Corp. v. Milspec Prods.*,
    No. 5:16-cv-616-oc-PRL, 2017 U.S. Dist. LEXIS 88597 (M.D. Fla. Jun. 9,
    2017) ......................................................................................................................19

*Solis v. CitiMortgage*,
    No. 1:16-cv-20612, 2018 U.S. Dist. LEXIS 1655 (S.D. Fla. Jan. 3, 2018)
    (Ungaro, J.) ..............................................................................................................4

*Spokeo v. Robins*,
    136 S.Ct. 1540 (2016) ..............................................................................................4

*Stansfield v. Minute Maid Co.*,
    124 F. Supp. 3d 1226 (N.D. Fla. 2015)................................................................8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................................14

*Toback v. GNC Hldgs., Inc.*,
    No. 13-80526-CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013)..........................6

*Tokyo Gwinnett, LLC v. Gwinnett Cnty.*,
    No. 17-11871, -- F.3d. -- (11th Cir. Oct. 11, 2019) ................................................4

*Tooltrend, Inc. v. CMT Utensili, SRL*,
    198 F.3d 802 (11th Cir. 1999) ...............................................................................15

*Trujillo v. Conover & Co. Commc'ns, Inc.*
    221 F.3d 1262 (11th Cir. 2000) .............................................................................16

*U.S. v. Undetermined Quantities of All Articles of Finished & In-Process Foods*,
    936 F.3d 1341 (11th Cir. 2019) ...............................................................................9

v

*U.S. v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956) ................................................................................18

*Walden v. Ctrs. for Disease Control & Prevention*,
   669 F.3d 1277 (11th Cir. 2012) ..............................................................7

*Williams v. Johnson*,
   232 So. 3d 483 (Fla. 3d DCA 2017) ......................................................15

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ..............................................................13

## Statutes and Legislative History

21 U.S.C. § 101.9(g) ................................................................................11

21 U.S.C. § 101.9(g)(4)(ii) .......................................................................11

21 U.S.C. § 321(ff) ....................................................................................9

21 U.S.C. §§ 321(ff)(1)(C) & (F) .............................................................9

21 U.S.C. § 321(ff)(3)(B)(i) .....................................................................12

21 U.S.C. § 321(ff)(3)(B)(ii) ....................................................................12

21 U.S.C. § 341-1(a)(2) .............................................................................8

21 U.S.C. § 343 ..........................................................................................1

21 U.S.C. § 343-1 .......................................................................................8

21 U.S.C. § 343(i)(2) ..................................................................................8

21 U.S.C. § 343-1(a)(2) ..............................................................................8

21 U.S.C. § 343-1(a)(4) ..............................................................................1

21 U.S.C. § 343(g) ......................................................................................1

21 U.S.C. § 343(q) ......................................................................................1

21 U.S.C. § 371 ........................................................................................19

28 U.S.C. § 1332(d)(2) ...............................................................................7

Fla. Admin. Code § 5K-4.002(1)(d) ........................................................17

Fla. Stat. § 500.01 ....................................................................................17

Fla. Stat. § 501.212(1) ...............................................................................8

Fla. Stat. § 581.217 (2019) .........................................................................2

Fla. Stat. § 581.217(7) (2019) ..................................................................17

IND. CODE ANN. § 24-4-21-4(a)(1) (2019) ................................................2

LA. STAT. ANN. § 3:1482(C)(3) (2019) ......................................................2

Ohio Rev. Code Ann. § 928.03 (2019) .....................................................18

TEX. CODE ANN. HEALTH & SAFETY § 443.205(a) (2019) ..........................................................2

**Regulations and Administrative Materials**

21 C.F.R. § 100.1(c)(4).............................................................................................................8, 9

21 C.F.R. § 101 .........................................................................................................................17

21 C.F.R. § 101.9(g)(3)..........................................................................................................1, 10

21 C.F.R. § 101.9(g)(3)(ii).........................................................................................................12

21 C.F.R. § 101.9(g)(4)..............................................................................................................10

21 C.F.R. § 101.9(g)(4)(ii).............................................................................................1, 11, 17

21 C.F.R. § 101.9(g)(6)................................................................................................................1

21 C.F.R. § 101.36(b)(3).............................................................................................................10

21 C.F.R. § 101.36(b)(3)(i).........................................................................................................10

21 C.F.R. § 101.36(f)..................................................................................................................10

21 C.F.R. § 355 ..........................................................................................................................12

Fla. Adm. Register (*available at*
    https://www.flrules.org/BigDoc/View_Section.asp?Issue=2972&Section=2
    (last visited Oct. 18, 2019) ...............................................................................................17

 Fla. Dep't of Ag. & Cons. Servs., *Proposed Rules for the State Hemp Program:*
    *Public Comment Period* (available at https://www.fdacs.gov/Cannabis/Hemp-
    CBD-in-Florida (last visited Oct. 18, 2019) .....................................................................17

Fla. Dep't of Ag. & Cons. Servs, *Proposed Rules for the State Hemp Program:*
    *Public Comment Period* (available at https://www.fdacs.gov/Cannabis/Hemp-
    CBD-in-Florida (last visited Oct. 18, 2019). ....................................................................17

Fla. Dep't of Agriculture and Consumer Services, *Notice of Development of*
    *Rulemaking* (Jun. 6, 2019) (*available a*t
    https://www.flrules.org/gateway/ruleNo.asp?id=5K-4.034) (last visited Oct.
    18, 2019) ...........................................................................................................................16

*Food Labeling: Mandatory Status of Nutrition Labeling and Nutrient Content*
    *Revision, Format for Nutrition Label*, 58 Fed. Reg. 2079 (1993) ...........................................12

*Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and*
    *Statements of Nutritional Support for Dietary Supplements*, 62 Fed. Reg.
    49859 (1997)......................................................................................................................10

Ohio Dep't of Agriculture, *Hemp Is Now Legal* (available at
    https://agri.ohio.gov/wps/portal/gov/oda/divisions/administration/resources/he
    mp-facts3 (last visited October 19, 2019)..........................................................................18

U.S. Food & Drug Admin., *Scientific Data and Information About Products*
    *Containing Cannabis or Cannabis-Derived Compounds; Public Hearing;*
    *Request for Comments*, 84 FR 12969 (Apr. 3, 2019)..........................................................17

UTAH ADMIN. CODE R68-26-5(3) (2019) .....................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................3

Fed. R. Civ. P. 12(b)(6)................................................................................................3

Fed. R. Civ. P. 23(b)(2)................................................................................................3

Proposed Rule 5K-4.034(6) .........................................................................................17

Proposed Rule 5K-4.034(6)(a) .....................................................................................17

Proposed Rule 5K-4.034(6)(b) .....................................................................................17

Proposed Rule 5K-4002(1)(d).......................................................................................17

**Other Authorities**

2019 Legis. Bill Hist., U.S. S.B. 2522, 2019 Legis. Bill Hist. (2019)..........................17

Food & Drug Admin., *FDA Acting Commissioner's Remarks to the 2019 FDLI
    Annual Conference*, at 4 (May 2, 2019) (available at
    https://www.fda.gov/news-events/speeches-fda-officials/fda-acting-
    commissioners-remarks-2019-fdli-annual-conference-05022019 (last visited
    Oct. 18, 2019) ...........................................................................................................20

GW Pharma, Ltd., *Summary of Product Characteristics:  Sativex Oromucosal
    Spray* (Sept. 3, 2019) https://www.medicines.org.uk/emc/product/602/smpc
    (last visited Oct. 20, 2019)........................................................................................12

http://www.greenroadsworld.com/collections/cbd-products/ .......................................5

Jacob Ogles, *Florida hemp rules ready for final review*, Fla. Pol. (Oct. 21, 2019)
    (*available at* https://floridapolitics.com/archives/309061-florida-hemp-rules-
    ready-for-final-review) (last visited Oct. 23, 2019)..................................................20

*Use of Cannabinoids in the Treatment of Epilepsy*, U.S. Patent 9,474,726B2,
    (filed Jun. 17, 2015)..................................................................................................12

*ACTIVE 46437036v12*

Defendant GREEN ROADS OF FLORIDA LLC ("Green Roads") moves to dismiss the Class Action Complaint filed by Plaintiffs BROOK SNYDER and RYAN TERRY ("Plaintiffs") on grounds set forth in the following Memorandum of Law.

## MEMORANDUM OF LAW

## I.    SUMMARY OF ARGUMENT

This class action arises out of the alleged misbranding of products sold by Green Roads containing cannabidiol ("CBD"), a naturally-occurring, indigenous nutrient of the plant *Cannabis sativa L*. Plaintiffs allege that they purchased through Green Roads' website a "Relax Box" and a 250 mg CBD Oil bottle. Complaint ("Compl."), ¶¶ 40, 43. Plaintiffs assert that the CBD content listed on the product label and packaging did not match Green Roads' laboratory certificates of analysis available online at the point-of-sale and accessible through a scannable QR (Quick Response) Code on the packaging of each product linked to a certificate of analysis of the CBD content performed by an independent testing laboratory. Compl., ¶¶ 22, 24-25 fn. 6-7.

Dietary ingredients are regulated by a comprehensive regulatory scheme pursuant to the Federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 343, *et seq*. Pursuant to 21 U.S.C. § 343 (the "Food Labeling Law"), a food is considered misbranded if it does not contain a label bearing certain nutritional information. 21 U.S.C. § 343(g). Unlike nutrients that are added to fabricated or fortified foods, the precise quantities of which can be controlled by a food producer, the FDCA and its implementing regulations set up a different structure for Class II nutrients that are "naturally occurring (indigenous) nutrients" which a food producer cannot control. 21 C.F.R. § 101.9(g)(3). For those "naturally occurring (indigenous) nutrients" -- which Plaintiffs admit CBD is (Compl., ¶ 3) – "the nutrient content of the composite must be at least 80% of the value for that nutrient declared on the label" and "[r]easonable excesses" "are acceptable within current good manufacturing practice." 21 C.F.R. § 101.9(g)(4)(ii) & (6).

Congress determined that the FDCA labeling standards must be followed nationwide and uniformly, and thus the FDCA has an express preemption provision which provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce…any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title." 21 U.S.C. § 343-1(a)(4). Plaintiffs seek to turn the federal regulatory regime for "naturally occurring (indigenous)" nutrients on its head: making producers liable for *any* deviation -- however infinitesimally small

1

-- between the label and the level of a naturally-occurring indigenous nutrient.

Worse still, Plaintiffs try to make their case by sleight of hand.  Plaintiffs point to Green Roads': (1) "product labeling and packaging;" and (2) "website."  Compl., ¶¶ 13, 15, fn. 3, 17, 41, 44.  But Plaintiffs fail to show the Court the entire label and packaging which contains a QR Code linked to certificates of analysis by an independent testing laboratory with the tested CBD content on the certificates of analysis available online at the point-of-sale where Plaintiffs claim to have made their purchase.  *Id.*, ¶¶ 22, 24-25 fn. 6-7.  Plaintiffs freely admit in their Complaint that the independent-laboratory tested CBD content is "available on [the] Green Roads['] website."  *Id.*, ¶¶ 24-25 fn. 6-7.[1]  The QR Codes on the labels and website link to certificates of analysis that show the actual tested CBD content per batch.  *See* Exhibit ("Ex.") 1-3 (exemplars), attached hereto.  Thus, Plaintiff Snyder's claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") does not meet the reasonable consumer standard, nor does it plead the required damages.  No reasonable consumer could still claim to be deceived when the certificate of analysis discloses the exact CBD content of the product they purchase.

Plaintiffs' claims are a class action in search of an injury.  Plaintiffs do not allege any benefits that they expected to receive, but did not.  Plaintiffs do not allege any physical harm or that they did not enjoy the products.  Plaintiffs do not even allege that they consumed the products.  There is no evidence that Plaintiff Snyder even bought the products from Green Roads' site.  Yet, to cast a broad net, Plaintiffs seek to represent class members for a class of products that Plaintiffs did not purchase and related to which they cannot have suffered an injury.  Compl., ¶¶ 2, 40, 43.  Thus, Plaintiffs have not stated a concrete injury conferring standing.

To the extent that there is any arguable doubt over the tolerances allowed for content labeling of "naturally occurring (indigenous) nutrients," the Florida Department of Agriculture & Consumer Services ("FDACS") and the Food & Drug Administration ("FDA") are poised to issue CBD regulations and guidance.  Rather than create a patchwork of interpretations, the Court should abstain based on the primary jurisdiction doctrine until the FDACS and FDA have spoken.  As will be explained, both intend to do just that.

---

[1] These requirements are now standard in Indiana, Texas, Florida, Louisiana, and Utah.  *See* IND. CODE ANN. § 24-4-21-4(a)(1) (2019); TEX. CODE ANN. HEALTH & SAFETY § 443.205(a) (2019); § 581.217, FLA. STAT. (2019); LA. STAT. ANN. § 3:1482(C)(3) (2019); UTAH ADMIN. CODE R68-26-5(3) (2019).

2

## II.   PLAINTIFFS' ALLEGATIONS.

Plaintiff Terry, an Ohio resident, alleges that he purchased a "Relax Box" with CBD Gummies, CBD Oil, and CBD Tea.  Compl., ¶¶ 35, 40.  Plaintiff Snyder, a Florida resident, alleges she purchased a 250 mg CDB Oil bottle "through the company's website." *Id.*, ¶¶ 34, 43.  She alleges that the "package and label" and the "website" of a 250 mg CBD Oil claimed a CBD level of "17 mg per ml," when the content was only "13.41 mg per ml." *Id.*, ¶¶ 16-17, 24.  Plaintiff Terry asserts that a CBD Gummies bottle was labeled with a total CBD content of "300 mg" when the content was "only 258.3 total mg of CBD." *Id.*, ¶¶ 18, 25.  Neither Plaintiff alleges that the product with the CBD test results they cite was what *they* bought.  Nor could they, because the test results they cite are a mismatch for the date of their alleged purchase. *Id.*, ¶¶ 24-25 fn. 6 (7/2/2018 tests)-7 (8/2019 tests), 40, 43.  Plaintiffs allege that they "reviewed the promises on the product labels" and "packaging." *Id.*, ¶¶ 41, 44.  Plaintiffs claim that they "either would not have made [the] purchase" or "would not have been willing to pay a premium for [the] purchase." *Id.*, ¶¶ 42, 44.  Plaintiffs do not allege that they consumed the products.  Plaintiff Snyder asserts a FDUTPA claim and both Plaintiffs assert an unjust enrichment claim. *Id.* ¶¶ 56-72. The Complaint seeks certification of a nationwide and Florida class, seeks injunctive relief under Fed. R. Civ. P. 23(b)(2) and seeks damages under 23(b)(3), including for "Products" they never bought. *Id.* ¶¶ 2, 45-54.

## III.   LEGAL STANDARD.

### A.   Federal Rule of Civil Procedure 12(b)(1).

Dismissal is proper under Fed. R. Civ. P. Rule 12(b)(1) if the plaintiff does not satisfy Article III standing requirements. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  Similarly, Rule 12(b)(1) dismissal is proper if the court lacks subject matter jurisdiction over the plaintiff's claim for reasons other than, or in addition to, lack of standing. *Butler v. Morgan*, 562 Fed. App'x 832, 834 (11th Cir. 2014).  Motions to dismiss for lack of subject matter jurisdiction may attack jurisdiction facially or factually. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint," while "[i]n resolving a factual attack, the district court may consider extrinsic evidence." *Id.* (citation omitted).

### B.   Federal Rule of Civil Procedure 12(b)(6).

"[T]o survive a motion to dismiss, 'a complaint must contain sufficient factual matter,

3

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Jones v. Select Portfolio Serv., Inc.*, No. 1:18-cv-20389, 2018 U.S. Dist. LEXIS 75886, at *4 (S.D. Fla. May 2, 2018) (Ungaro, J.) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id*. (*quoting Ashcroft*, 556 U.S. at 678). "[A] formulaic recitation of the elements of a cause of action will not do," and the plaintiff must offer in support of its claim 'sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Solis v. CitiMortgage*, No. 1:16-cv-20612, 2018 U.S. Dist. LEXIS 1655, at *4-*5 (S.D. Fla. Jan. 3, 2018) (Ungaro, J.) (*quoting Simpson v. Sanderson Farms*, Inc. 744 F.3d 702, 708 (11th Cir. 2014)).

## IV.  **PLAINTIFFS LACK STANDING.**

### A.  **Plaintiffs Lack Actual Injury and Standing To Sue.**

"[A]t least one named class representative [must have] Article III standing to raise each class subclaim." *Ohio State Troopers Ass'n v. Point Blank Enters*., 347 F. Supp.3d 1207, 1218 (S.D. Fla. 2018) (Ungaro, J.) (*citing Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "As set forth by the Supreme Court in *Spokeo v. Robins*, Article III standing requires a plaintiff to have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Ohio State*, 347 F. Supp.3d at 1218 (*quoting Spokeo v. Robins*, 136 S.Ct. 1540 (2016)). "'To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Ohio State*, 347 F. Supp.3d at 1218 (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For the injury to be 'concrete,' it must be 'real,' and not 'abstract;' however it need not be 'tangible.'" *Ohio State*, 347 F. Supp.3d at 1218-19. Because Plaintiffs fail to facially allege any actual injury, their Complaint must be dismissed.

"It is a plaintiff's burden to 'allege specific, concrete facts demonstrating that the challenged practices harm[ed] [it].'" *Tokyo Gwinnett, LLC v. Gwinnett Cnty*., No. 17-11871, -- F.3d. --, 2019 U.S. App. LEXIS 30455, at *16 (11th Cir. Oct. 11, 2019) (internal citations omitted). But Plaintiffs' own allegations belie the notion that any purported conduct caused them any injury. Plaintiffs allege that they purchased products on two discrete occasions, supposedly in March and April 2019. As of that time period, Plaintiffs would have been presented with (i) a QR Code that disclosed the content of the bottle; and (ii) a disclosure. *See* <u>Exhibit 1-3</u>. Plaintiffs fail to allege

4

any benefits that they did not obtain from the products. They fail to allege any physical harm, and in particular, they fail to allege that they even consumed the products.  Under these circumstances, there is no concrete harm.  In *Doss v. Gen. Mills, Inc*., No. 18-61924, 2019 U.S. Dist. LEXIS 100791, at *5-*7 (S.D. Fla. Jun. 14, 2019), the Court dismissed a FDUTPA class action for failure to disclose the presence of glyphosate in Cheerios cereal.  In *Doss*, as here, the plaintiff did "not allege her health has suffered as a result of eating Cheerios."  *Id*. at *5-*6.  Instead, like the Plaintiffs here, she alleged "economic loss."  And, as with the Plaintiffs here, the plaintiff in *Doss* did "not allege she even consumed the Cheerios she purchased."  *Id*. at *6; *see also DeBernardis v. IQ Formulations,* LLC, No. 17-cv-21562, 2018 WL 1536608, at *3 (S.D. Fla. Mar. 29, 2018) (dismissing FDUTPA class action where plaintiffs did not allege that they suffered a physical injury, that the products failed to work as advertised, or that they even consumed the product but instead relied on conclusory allegations of economic harm, that because the product was misbranded it had no economic value, and the price paid by plaintiffs was an unwarranted amount), *appeal argued*, No. 18-11778 (11th Cir. Feb. 14, 2019).  Because Plaintiffs allege no concrete injury and purchased with knowledge of the CBD content of each bottle, Plaintiffs lack standing.[2]

    **B.**   **Plaintiffs Lack Standing to Sue For Products They Did Not Purchase.**

       Plaintiff Terry alleges that he purchased a "Relax Box" with Gummies, CBD Oil and CBD Tea, while Plaintiff Snyder alleges she purchased the CDB Oil in the 250 ml version.  Compl., ¶¶ 40, 43.  But contrary to that, they define the "Products" as encompassing virtually all products sold by Green Roads, including CBD Oil, CBD Gummies, CBD Capsules, CBD Terpenes, CBD Topicals, CBD Syrups, CBD Tea, and CBD Coffee.  Compl., ¶¶ 2, 45.[3]  To illustrate the overbreadth of Plaintiffs' claims, Plaintiffs are asserting claims on "CBD Topicals" -- topical skin creams -- even though they assert they purchased ingestible products. *Id.* This Court has twice held that a plaintiff cannot bring a claim for a product that they did not individually purchase.  *Ohio*

---

[2] *Accord*, *Nicklaw v. Citimortgage*, Inc., 839 F.3d 998, 1002-03 (11th Cir. 2016) (concluding that appellant lacked jurisdiction when plaintiff alleged neither harm nor material risk of harm in connection with Citimortgage's failure to timely file a certificate of discharge after satisfaction of mortgage); *Higgens v. Trident Asset Mgmt.*, LLC, No. 16-24035-Civ, 2017 WL 1230537, at *2 (S.D. Fla. Mar. 28, 2017) (plaintiff lacked standing, even for technical statutory violation, where he simply alleged that he had been "damaged" by credit violation); *Kawa Orthodontics, LLP v. Lew*, No. 13-80990-CIV, 2014 WL 12489601, at *2 (S.D. Fla. Jan. 13, 2014) (finding that plaintiff lacked standing when there was "no concrete injury in fact").
[3] The Products are further listed at http://www.greenroadsworld.com/collections/cbd-products/.

*State*, 347 F. Supp.3d at 1219-1223 (plaintiffs lack standing to bring FDUTPA claim for products they did not purchase); *De Lara v. RB Miami Beach, LLC*, No. 1:18-cv-23229, 2019 U.S. Dist. LEXIS 68721, at *7-*8 (S.D. Fla. Apr. 22, 2019) (Ungaro, J.) (dismissing FDUTPA claim where consumer had not visited restaurant with alleged deceptive charges).  Nor are Plaintiffs allowed to challenge non-purchased products that are "sufficiently similar" to the purchased products. *Ohio State*, 347 F. Supp.3d at 1220 fn. 4 (noting "sufficiently similar cases," but finding Eleventh Circuit requires standing for each subclass); *Sanchez-Knutson v. Ford Motor Co.,* No. 14-61344-CIV, 2015 U.S. Dist. LEXIS 181103, at *11 (S.D. Fla. Jul. 22, 2015); *Toback v. GNC Hldgs., Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *4-*5 (S.D. Fla. Sept. 13, 2013).  Plaintiffs' claims pertaining to Products they did not allege they purchased should be dismissed.  *Ohio State*, 347 F. Supp.3d at 1218.

### C.     Plaintiffs Lack Standing To Seek Injunctive Relief.

"[W]hen a party seeks injunctive relief, it must show 'that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending.'"  *Ohio State*, 347 F. Supp.3d at 1219 (*quoting Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  "The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought. 'In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that [s]he will be affected by the allegedly unlawful conduct in the future.'"  *Ohio State*, 347 F. Supp.3d at 1227 (FDUTPA injunctive relief claim barred by lack of standing) (*quoting Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013)).

"[A] declaratory judgment may only be issued in the case of an 'actual controversy.'" *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).  "In this circuit, at the motion to dismiss stage, '[a] prayer for injunctive and declaratory relief requires an assessment…of whether the plaintiff has sufficiently shown a real and immediate threat of future harm.'"  *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 6:19-CV-196-Orl-31DCI, 2019 WL 2567971, at *2-3 (M.D. Fla. Jun. 21, 2019) (*quoting Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2007) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660 (1983)).  "Past exposure to [allegedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *City of Los Angeles*, 461 U.S. at 95, 103 S.Ct. at 1662.  "[F]or an injury to suffice for prospective relief, it must be imminent.'"  *Elend*, 471 F.3d at 1207.  A plaintiff seeking 'declaratory and injunctive relief…must demonstrate that [s]he is likely to suffer future injury…at the hands of the defendant'

6

and that 'the relief the plaintiff seeks will likely prevent such injury from occurring.'" *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203-04 (11th Cir. 1991); *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012) (in order to have standing to pursue declaratory relief, "a plaintiff must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future"); *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999) (plaintiff lacked standing to seek a declaration that provisions of Florida's post-judgment garnishment statute were unconstitutional where plaintiff alleged no facts giving rise to a reasonable belief that his funds would be frozen in the future).

Where there is no pleading of future intent to use a product, an injunctive relief claim fails. *Herazo v. Whole Foods Mkt.*, No. 14-61909, 2015 U.S. Dist. LEXIS 96811, at *9 (S.D. Fla. Jul. 24, 2015) (dismissing injunctive relief claim where the complaint "details past injury regarding the product labeling," "contains an allegation that but for the misleading labeling, Plaintiffs would not have purchased the homeopathic medication," but did not allege the risk of future injury). Here, Plaintiffs have not alleged that they continue to purchase the Products. To the contrary, Plaintiffs affirmatively allege that ***they will not purchase*** absent a labeling change. Compl., ¶¶ 42, 44 ("If Plaintiff[s] could rely upon the truthfulness of Green Roads' labeling, [they] would continue to purchase Green Roads' Products in the future").

## D.   Plaintiffs Lack Standing Because Snyder Did Not Purchase Online.

Plaintiff Snyder alleges she purchased "through the company's website" on March 10, 2019. Compl., ¶ 43. Green Roads has no business record of this purchase. *See* Ex. 4 (Affidavit of Ken Mark). Plaintiffs based their standing on $5 million in damages predicated, in part, on Snyder's FDUTPA claim under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) ("CAFA"). *Id.*, ¶ 37. Plaintiffs *factually* lack standing because, in the absence of Snyder's FDUTPA claim, there is no evidence that the damages exceed $5 million. *Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp.3d 1300, 1303-04 (S.D. Fla. Mar. 7, 2014) (dismissing evaporated cane juice class action where no evidence existed that FDUTPA relief exceeded $5 million CAFA threshold).

## V.   THE COMPLAINT FAILS TO STATE A CLAIM.

### A.   The FDUTPA's Safe Harbor.

FDUTPA's safe harbor, together with the pre-emptive effect of federal law, preclude liability on Plaintiff Snyder's FDUTPA claim. The FDUTPA does not apply to "an act or practice

required or specifically permitted by federal or state law." *See* § 501.212(1), Fla. Stat. "Pursuant to the safe harbor provision [in Section 501.212(1)], there is no liability under FDUTPA when the challenged action is specifically permitted under federal law." *Phelps v. Hormel Foods Corp*., 244 F. Supp.3d 1312, 1319 (S.D. Fla. 2017) (dismissing FDUTPA class action based on "natural" labeling on deli-style meat products where labeling was "specifically permitted"); *Kuenzig v. Hormel Foods Corp*., No. 12-11180, 505 Fed. Appx 937, at *938 (11th Cir. 2013) (affirming dismissal of FDUTPA class action based on labeling of lunch meats where labels met labeling standards); *Savalli v. Gerber Prods. Co*., No. 15-61554, 2016 U.S. Dist. LEXIS 138014, *2 (S.D. Fla. Sept. 20, 2016) (dismissing FDUTPA class action wherein consumers allege they were deceived that cereal contained fruit where the FDCA permitted the label).

###    B.    Pre-Emption Under The Nutrition Labeling & Education Act.

Together with FDUTPA's safe harbor, federal law precludes Plaintiffs from advocating a labeling standard that is more restrictive than federal law.  Congress has determined that certain food labeling requirements must adhere to "national uniform" standards. *See* 21 U.S.C. § 343-1. Congress amended the FDCA with the 1990 Nutrition Labeling and Education Act ("NLEA"), a statute that expressly preempts any food labeling requirement "not identical" to the federal standard. *Id.* The labeling requirements of Section 343(i)(2) are subject to the NLEA's express preemption provision. *See* 21 U.S.C. § 343-1(a)(2).  Accordingly, any FDUTPA claims fail to state a claim. *Prohias v. Pfizer, Inc*., 490 F. Supp.2d 1228, 1234 (S.D. Fla. 2007) (dismissing FDUTPA claims as pre-empted for time period for drug where FDA regulated it).

Congress passed NLEA in 1990 to "create uniform national standards regarding the labeling of food." *Savalli*, 2016 WL 5390223, at *3 (citation omitted). To accomplish Congress' goal of national uniformity, the NLEA contains an express preemption provision, explicitly preempting any state labeling requirements "not identical" to federal labeling requirements. *See* 21 U.S.C. § 341-1(a)(2). NLEA preemption bars any non-identical labeling requirement, whether imposed via state statute or through litigation-based misbranding efforts like the Complaint here. *Savalli*, 2016 WL 5390223 at *3 (state regulation and litigation-based claims barred by NLEA).  The term "not identical" in NLEA is defined broadly to mean any requirement "concerning the…labeling of food…(i) [] not imposed by or contained in the applicable provision; or (ii) [that] [d]iffer from those specifically imposed by or contained in the applicable provision." 21 C.F.R. 100.1(c)(4); *see also Stansfield v. Minute Maid Co.*, 124 F. Supp. 3d 1226, 1232 (N.D. Fla. 2015) (adopting definition set

forth in § 100.1(c)(4)). Accordingly, Florida federal courts regularly dismiss complaints where the plaintiff's claims demand labeling requirements "not identical" to those imposed by federal law. *Stansfield*, 124 F. Supp. 3d at 1232 (dismissing complaint based on NLEA preemption); *Savalli*, 2016 WL 5390223 at *4 (same); *Birmingham v. Walgreen*, 2014 WL 12479929, at *5 (S.D. Fla. Jan. 7, 2014). Therefore, to state a claim, the labeling must violate the FDCA. *Savalli*, 2016 WL 5390223, at *3 ("[T]o the extent that conduct is specifically permitted by the FDCA, it is not actionable under the FDUTPA; or to the extent that the FDUTPA would extend liability to conduct expressly permitted by the FDCA, the FDCA preempts the FDUTPA").

  **C.**  **Plaintiff's FDUTPA Claim Falls Under The 80% Safe Harbor.**

    **1.**  **CBD Is A Dietary Ingredient Because It Is A Botanical or Herb.**

  The FDCA establishes an 80% safe harbor for naturally occurring nutrients occurring in other dietary ingredients. The Dietary Supplement Health and Education Act of 1994 ("DSHEA") amended the FDCA to cover an "'herb or other botanical'" or a "'concentrate, metabolite, constituent, extract, or combination of'" an "'herb or other botanical.'" *U.S. v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1344 (11th Cir. 2019) (quoting 21 U.S.C. §§ 321(ff)(1)(C) & (F)). Under the DSHEA, a "dietary ingredient" includes "(C) an herb or other botanical;….or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause [(A) through (E)]." 21 U.S.C. § 321(ff).

  Plaintiffs' own allegations classify CBD as a "botanical" or "herb." Plaintiffs' allegations on the face of the Complaint allege that CBD is "one of the naturally occurring cannabinoids found in cannabis plants, including hemp." Compl., ¶ 3. "[T]he usual connotation of 'botanical' when used as a noun, as recognized in dictionaries in use when DSHEA was enacted as well as those i[n] use today, is a substance derived from a plant used for a limited category of purposes." *Undetermined Quantities*, 936 F.3d at 1346. The dictionary definition of "botanical" defines it as a "substance obtained or derived from a plant[,] such as…a plant part or extract used especially in" certain uses. *Id.* at 1346. A "constituent" is an "essential part." *Id.* at 1347. Consistent with the above definitions, CBD is a "botanical" and an "extract." *Horn v. Medical Marijuana, Inc*., 383 F. Supp.3d 114, 120 & 124 (W.D.N.Y. 2019) ("marijuana plant and industrial hemp plant come from the same botanical species" and CBD is a "resin extracted from" Cannabis sativa plant).

9

### 2.  CBD Is A Naturally-Occurring (Indigenous) Class II Nutrient.

The regulation addressing the nutrition labeling of dietary supplements and, by extension, "dietary ingredients," is found at 21 C.F.R. § 101.36(f). 21 CFR § 101.36(f) states that "[t]he criteria on class I and class II nutrients given in § 101.9(g)(3) and (g)(4) also are applicable to *other dietary ingredients* described in paragraph (b)(3)(i) of this section."  21 CFR § 101.36(f) (emphasis added).  In turn, the other dietary ingredients described in 21 CFR 101.36(b)(3), are described in subsection (i) as follows:

> (i) Dietary ingredients for which FDA has not established RDI's [Reference Daily Intakes] or DRV's [Daily Reference Values] and that are not subject to regulation under paragraph (b)(2) of this section (hereinafter referred to as "other dietary ingredients") shall be declared by their common or usual name when they are present in a dietary supplement, in a column that is under the column of names described in paragraph (b)(2)(i)(B) of this section or, as long as the constituents of an other dietary ingredient are not listed, in a linear display, under the heavy bar described in paragraph (e)(6) of this section, except that if no (b)(2)-dietary ingredients are declared, other dietary ingredients shall be declared directly beneath the heading "Amount Per Serving" described in paragraph (b)(2)(i)(A) of this section.

Section 101.9(g)(3) defines Class I and Class II nutrients[4] as follows:

> (i)    Class I.  Added nutrients in fortified or fabricated foods; and
> (ii)   Class II.  Naturally occurring (indigenous) nutrients.  ***When a nutrient is naturally occurring (indigenous) in a food or an ingredient that is added to a food,*** the total amount of such nutrient in the final food product is subject to class II requirements, except that when an exogenous source of the nutrient is also added to the final food product, the total amount of the nutrient in the final food product (indigenous and exogenous) is subject to class I requirements.

*See* 21 C.F.R. § 101.9(g)(3) (emphasis added).

Plaintiffs' own admissions classify CBD as a Class II nutrient.  Plaintiffs' allegations track the regulatory definition of a Class II nutrient by referring to CBD as "one of the *naturally occurring* cannabinoids found in cannabis plants, including hemp." Compl., ¶ 3 (emphasis added).

### 3.  Naturally Occurring Nutrients Have An 80% Safe Harbor.

The actual value for a Class II naturally-occurring nutrient in a "dietary ingredient" has a

---

[4] "Nutrients" is defined to "include vitamins, minerals, herbs, and other similar nutritional substances." *Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements*, 62 Fed. Reg. 49859, at ¶ 1 (1997)

permissible tolerance from the value stated on the label.   "If a product contains a Class I nutrient, the rule is that the amount of that nutrient in the Product must be equal to the value for that nutrient declared on the product's label."   *Gubala v. CVS Pharm.*, No. 14-C-9039, 2016 U.S. Dist. LEXIS 32759, at *33 (N.D. Ill. Mar. 15, 2016).   "If the nutrient is a Class II nutrient, however, the regulations state that the product can contain less than the amount declared on the product label, so long as it contains at least 80% of the declared value."   *Gubala*, 2016 U.S. Dist. LEXIS 32759, at *33.[5]   Section 101.9(g) codifies this 80% safe harbor for variations of "naturally occurring (indigenous) nutrients" in 101.9(g)(4)(ii):

> (4)      A food with a label declaration of a vitamin, mineral, protein, total carbohydrate, dietary fiber, soluble fiber, insoluble fiber, polyunsaturated or monounsaturated fat shall be deemed to be misbranded under section 403(a) of the Federal Food, Drug, and Cosmetic Act (the act) unless it meets the following requirements:
>
> > (i)      When a vitamin, mineral, protein, or dietary fiber meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label.
> >
> > (ii)      When a vitamin, mineral, protein, total carbohydrate, polyunsaturated or monounsaturated fat, or dietary fiber meets the definition of a Class II nutrient, ***the nutrient content of the composite must be at least equal to 80 percent of the value for that nutrient declared on the label***.   *Provided*, That no regulatory action will be based on a determination of a nutrient value that falls below this level by a factor less than the variability generally recognized for the analytical method used in that food at the level involved.

21 C.F.R. § 101.9(g)(4)(ii) (emphasis added).

The FDA rejected a stricter standard than the 80% safe harbor:

> ***While it is highly desirable to have a precise nutrient value on the label, it is impractical. The natural variability of a food is dependent upon a number of factors. Among them are the season of the year, soil type, variety (cultivar), and weather conditions. The processing that a food undergoes also alters its nutrient content.*** In addition to these variables, the agency places restrictions on the label declarations in regard to the rounding of nutrient values. These rounding rules are to avoid the impression of unwarranted accuracy as well as to make a label easier for a consumer to review and understand. To declare nutrient values more

---

[5]  U.S. FOOD & DRUG ADMIN., GUIDANCE FOR INDUSTRY: GUIDE FOR DEVELOPING AND USING DATA BASES FOR NUTRITION LABELING: 2 (MAR. 1998) ("CLASS II nutrients **must be present at 80% or more of the value declared on the label**") (emphasis added).

11

accurately or precisely than is presently required would place an onerous burden on the manufacturer. The costs associated with the excessive controls to provide more exact label declarations are unreasonable and would not be commensurate with any possible additional health benefit.

See Food Labeling:  Mandatory Status of Nutrition Labeling and Nutrient Content Revision, Format for Nutrition Label, 58 Fed. Reg. 2079, at 2161, ¶ 238 (1993) (emphasis added).

In essence, CBD, as a naturally occurring (indigenous) nutrient in a hemp extract, is a Class II nutrient as defined in 21 CFR § 101.9(g)(3)(ii). Thus, CBD, as a naturally occurring nutrient, has a 20% tolerance (including "[r]easonable excesses") permitted between the actual content and the labeled amount.

### 4.    The Drug Exception Does Not Apply To This CBD Extract.

The definition of "dietary supplement" in 21 U.S.C. § 321(ff)(3)(B)(i)-(ii) does not exclude Green Roads' CBD Products.  Section 321(ff)(3)(B)(i) excludes, as a "dietary supplement," "an article that is approved as a new drug under section 355 of this title, certified as an antibiotic." Additionally, an article "licensed as a biologic" may be excluded as a dietary supplement if it was not "marketed" as a dietary supplement before such "approval, certification, licensing, or authorization."  21 U.S.C. § 321(ff)(3)(B)(i).  Section 321(ff)(3)(B)(ii) excludes as a "dietary supplement" an "article authorized for investigation as a new drug, antibiotic, or biological for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public" if the "article" was not "marketed" as a dietary supplement before such "authorization."  21 U.S.C. § 321(ff)(3)(B)(i).  The two drugs containing CBD to date -- Epidiolex® and Sativex® -- are each highly concentrated solutions of CBD made from an isolate and dedicated toward treatment of unique medical conditions,[6] whereas Green Roads' CBD Product is offered only at radically lower concentrations and is not for the treatment or prevention of any disease.  See Ex. 1.  Thus, the CBD ingredient is a different "article" than the ingredient

---

[6] For Epidiolex®, Use of Cannabinoids in the Treatment of Epilepsy, U.S. Patent 9,474,726B2, (filed Jun. 17, 2015) describes a highly-concentrated form of CBD with CBD concentration "present at greater than 98% of the total extract."  Id., Col. 1, l. 20-21.  Sativex® Oromucosal Spray, which is approved for treatment of patients with moderate to severe spasticity due to multiple sclerosis, contains 2.5 mg CBD per 100 microliter spray dose – far in excess of Green Roads' products at issue.  See GW Pharma, Ltd., Summary of Product Characteristics:  Sativex Oromucosal Spray (Sept. 3, 2019) https://www.medicines.org.uk/emc/product/602/smpc (last visited Oct. 20, 2019).  In short, neither Epidiolex® nor Sativex® are the same "article" as Green Roads' CBD products pursuant to Section 321(ff)(3)(B)(i)-(ii).

12

investigated and approved as a drug; therefore, the CBD ingredient used by Green Roads is not excluded from being legally used as a dietary ingredient in a dietary supplement.

### D.    Plaintiff Snyder's FDUTPA Claim Fails Independently.

#### 1.    Plaintiff Fails to Allege Deception to a Reasonable Consumer.

Plaintiff Snyder's FDUTPA claim does not meet the reasonable consumer standard. Plaintiff's own allegations refute the assertion that she was deceived, as the (1) QR Codes on each bottle clearly link to a certificate from an independent testing laboratory disclosing the amount of naturally occurring CBD in each batch (Ex. 1-2); and (2) as Plaintiffs themselves admit (Compl., ¶¶ 24-25 fn. 6-7), the certificates of the CBD content are available at the point-of-sale on the website itself.  No "reasonable consumer" reads those disclosures—and the other disclosures—and interprets them to mean that naturally-originating nutrients within a hemp extract will match milligram for milligram the amount stated on the label.  Plaintiffs' claims lack facial plausibility and must be dismissed.

To state a FDUTPA claim, a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *See In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1320 (S.D. Fla. 2010).  Here, Plaintiff does not—and cannot—contest the fact that the natural CBD content was disclosed means that there is simply no "claim to relief that is plausible on its face" that there was any deceptive or unfair conduct that took place here.  *Iqbal*, 556 U.S. at 678 (citation and quotations omitted).

"[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281, 1284 (11th Cir. 2007).  "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'"  *Id*.  "An act or practice is 'unfair' if it causes consumer injury that is (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition, and (3) one that consumers themselves could not have reasonably avoided."  *Casey v. Fla. Coastal Sch. Of Law, Inc*., 2015 U.S. Dist. LEXIS 176281, at *20-21 (M.D. Fla. Aug. 11, 2015), *report adopted*, 2015 U.S. Dist. LEXIS 176284 (M.D. Fla. Sept. 28, 2015).  "An injury is reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it.'"  *Id*. (*quoting Orkin Exterm. Co., Inc. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir. 1988)).  The district court can determine whether the reasonable consumer would find the label

13

false or misleading as a matter of law where such a conclusion lacks plausibility. *Salters v. Beam Suntory*, No. 4:14cv659-RH/CAS, 2015 U.S. Dist. LEXIS 62146, at *5 (N.D. Fla. May 1, 2015) (dismissing FDUTPA class action where no reasonable consumer could find bourbon whiskey was actually "handmade"); *Casey*, 2015 U.S. Dist. LEXIS 176281, at *22.

Here, the laboratory certificates are incorporated by reference into the label and the reasonable consumer would review both.[7]  Reasonable consumers are expected to "read the label." *Savalli*, 2016 U.S. Dist. LEXIS 138014, *2 (dismissing FDUTPA class action arising where consumers allege they were deceived that cereal contained fruit).  In the absence of a plausible allegation that the reasonable consumer would be deceived, Plaintiff cannot state a claim.

### 2.   Plaintiff Does Not—And Cannot—Allege Actual Damages.

Plaintiff Snyder's allegations fare no better as they relate to pleading damages.  Again, a FDUTPA claim requires Plaintiff Snyder to plead sufficient factual allegations to show she suffered "actual damages."  *See Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc*., No. 15-81062-CIV, 2016 WL 4256916, at *4 (S.D. Fla. May 16, 2016).  Plaintiff does not—and cannot—allege facts showing what, if any, damages resulted when the lab results and the QR Code disclosed the specific content of the batch.  *See Mesa v. Law Enf't Sys*., No. 15-21089-CIV, 2015 WL 12804525, at *6 (S.D. Fla. Aug. 4, 2015) (dismissing FDUTPA claim where plaintiff failed to allege actual damages and closest plaintiff came was "alleging 'frustration and stress[.]'"); *Mantz v. TRS Recovery Servs., Inc*., No. 12-81039-CIV, 2012 WL 12897159, at *3 (S.D. Fla. Oct. 30, 2012) ("Merely labeling an amount of damages as 'actual' is conclusory and insufficient to maintain a cause of action on its own."); *QSGI, Inc. v. IBM Glob. Fin*., No. 11-80880-CIV, 2012 WL 1150402, at *5 (S.D. Fla. Mar. 14, 2012) (dismissing plaintiff's FDUTPA claim because plaintiff "failed to plead facts sufficient to show actual damages under FDUTPA"); *Fla. Cement*, 746 F. Supp. 2d at 1321–22 (holding FDUTPA claim alleging plaintiff paid "supra-competitive

---

[7] "When ruling on a motion to dismiss," "a court must limit its consideration to the complaint, any documents attached to the complaint as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Cypress Bend IV Condo. Ass'n, Inc. v. Allstate Ins. Co*., No. 10-60317-CIV, 2010 WL 115976696, at *2 (S.D. Fla. May 4, 2010) (emphasis added) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323 (2007)). "[T]he Court may consult documents attached to a motion to dismiss without converting the motion into a motion for summary judgment if the document is central to the Plaintiff's claim and undisputed, i.e., unchallenged." *Jones*, 2018 U.S. Dist. LEXIS 75886, at *3 fn. 1 (*citing Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

14

and artificially inflated prices" for a product was insufficient to adequately plead actual damages).

E.    **Plaintiffs' Unjust Enrichment Claim Fails To State A Claim.**

"A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a 'contract' as a matter of law." *Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805 (11th Cir. 1999). As a result, and because Plaintiffs supposedly acquired the products by a consumer retail purchase, Plaintiffs' unjust enrichment claim must be dismissed. *See Leader Global Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.,* 155 F. Supp.3d 1310, 1320 (S.D. Fla. 2016) (Ungaro, J.) (dismissing Plaintiff's unjust enrichment claim based on an "[i]nvoice" because "an express contract governs the subject matter of the dispute").[8] This rule applies even where an alternative count fails. *Id.* at 1320 (dismissing unjust enrichment claim due to existence of contract governing plaintiff's rights even while dismissing breach of contract claim).

Finally, Plaintiffs fail to allege that they lack an adequate remedy at law, which is fatal to their unjust enrichment claim. *Guerrero v. Target*, 889 F. Supp.2d 1348, 1357 (S.D. Fla. 2012); *Prohias*, 490 F. Supp2d at 1236 (dismissing unjust enrichment claim arising out of consumer purchase based on misrepresentations on quality of honey). This requirement applies even where the unjust enrichment claim is brought in the alternative to a FDUTPA claim seeking "recovery for the exact same wrongful conduct," and that fails to state a claim. *Id.* at 1237. An unjust enrichment claim cannot be pled in the alternative to a FDUTPA claim "'where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal.'" *Koski v. Carrier*, 347 F. Supp.3d 1185, 1196 (S.D. Fla. 2017) (internal quotations and citations omitted). Accordingly, the unjust enrichment claim should be dismissed. *Prohias*, 490 F. Supp.2d at 1234 (dismissing unjust enrichment claim for cholesterol drug in consumer purchase

---

[8] *Accord, Restrepo v. Wells Fargo Bank, N.A.,* No. 09-22436-CIV, 2010 WL 374771, at *3 (S.D. Fla. Feb. 3, 2010) (dismissing Plaintiff' unjust enrichment claim with prejudice because Plaintiff has alleged the "existence of an express contract"); *ATA-CIF, LLC v. IECUBED, LLC,* No. 8:11-cv-603-T-33EAJ, 2011 WL 6217508, at *2 (M.D. Fla. Dec. 14, 2011) ("'Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'"); *Kirchner v. Ocwen Loan Servicing, LLC*, 257 F. Supp. 3d 1314, 1325 (S.D. Fla. 2017) (dismissing with prejudice plaintiffs' unjust enrichment claim relating to property inspection fees governed by the mortgage); *Williams v. Johnson*, 232 So. 3d 483, 484 (Fla. 3d DCA 2017) ("[G]iven the existence of an express contract covering the same subject matter, claims arising out of that contractual relationship will not support a claim for unjust enrichment.")(internal quotations and citations omitted).

where plaintiffs fail to plead that they lack an adequate remedy at law); *Herazo*, 2015 U.S. Dist. LEXIS 96811, at \*7-8 (dismissing unjust enrichment claim based on consumers' retail purchase of homeopathic products, reasoning that "the Plaintiffs' purchase of the homeopathic products[] forms the basis of an express contract and dismisses the unjust enrichment claim").

## VI.   THE COURT SHOULD STAY THIS CASE PENDING IMPENDING ADMINISTRATIVE GUIDANCE.

Alternatively, this action should be stayed pending imminent state and federal CBD regulation and guidance.  District courts have inherent discretionary power to stay cases.  *See Saleh v. Me Bath Spa Experience, LLC*, No. 17-cv-62322, 2018 WL 398325, at \*1 (S.D. Fla. Jan. 12, 2018) (*citing Trujillo v. Conover & Co. Commc'ns, Inc.* 221 F.3d 1262, 1264 (11th Cir. 2000)). A "stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court."  *Trujillo*, 221 F.3d at 1264 (*citing Clinton v. Jones*, 520 U.S. 681, 706 (1997)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

"The primary jurisdiction doctrine applies where a case implicates a federal agency's expertise with a regulated product."  *Herazo*, 2015 U.S. Dist. LEXIS 96811, at \*12 (citation omitted).  "'The doctrine enables a court to take advantage of an agency's expertise, protects the integrity of the regulatory scheme, and promotes uniformity.'" *Herazo*, 2015 U.S. Dist. LEXIS 96811, at \*13 (*quoting Greenfield v. Yucatan Foods, L.P.,* 18 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014) (*quoting Flo-Sun, Inc. v. Kirk,* 783 So. 2d 1029, 1037 (Fla. 2001)). The primary jurisdiction doctrine is a discretionary doctrine that allows "'courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency.'" *Herazo*, 2015 U.S. Dist. LEXIS 96811, at \*13 (quoting *Garrison v. Whole Foods Market Group, Inc.,* No. 13-05222-CV, 2014 WL 2451290, \*2 (N.D. Cal. June 2, 2014)). This Court should stay the case based on the primary jurisdiction doctrine.

### A.    The Forthcoming CBD Regulation and Guidance.

The State of Florida and the FDA are poised to act on CBD regulation.  In Florida, after holding two rulemaking workshops in June 2019,[9] FDACS is fast-tracking a Notice of Proposed Rules on October 10, 2019, for which the public comment period will expire on October 31,

---

[9] *See* Fla. Dep't of Agriculture and Consumer Services, *Notice of Development of Rulemaking* (Jun. 6, 2019) (*available at* https://www.flrules.org/gateway/ruleNo.asp?id=5K-4.034) (last visited Oct. 18, 2019).

2019,[10] public hearings will be completed on October 21, 2019,[11] and the Rules will be submitted to the Joint Administrative Procedures Committee and the U.S. Department of Agriculture in the Fall of 2019.[12]   Amongst the proposed rules, Proposed Rule 5K-4.034(6) regulates "[l]abeling" and states that "[*f*]*ood* consisting of or ***containing Hemp Extract must be labeled as required by*** ch. 500, F.S.,[13] s. 581.217(7), F.S.,[14] and ***21 CFR Par 101***, as incorporated by reference in Section 5K-4002(4), F.A.C.,[15] and must declare the number of milligrams of Hemp Extract."  *See* Proposed Rule 5K-4.034(6)(a).  It states: "If specific cannabinoids are marketed, the number of milligrams of each cannabinoid per serving must be declared on the label."  *See* Proposed Rule 5K-4.034(6)(b).  21 C.F.R. Part 101, as used in the Proposed Rule quoted above, is the FDCA's implementing regulations on "Food labeling."  Part 101 specifically includes the 80% safe harbor for Class II nutrients at Section 101.9(g)(4)(ii).  *See* 21 C.F.R. § 101.9(g)(4)(ii).

The FDA is proceeding on a parallel path to fast-track CBD regulation.  In the last six months, the FDA has conducted a public hearing and instituted an agency task force on CBD regulation.[16] Indeed, Senate Majority Leader Mitch McConnell has introduced an amendment to an appropriations bill that would require the FDA to fast-track guidance on "the process in which CBD meeting the definition of hemp will be evaluated for use in products."[17]   Thus, CBD

---

[10] Fla. Dep't of Ag. & Cons. Servs., *Proposed Rules for the State Hemp Program:  Public Comment Period* (available at https://www.fdacs.gov/Cannabis/Hemp-CBD-in-Florida (last visited Oct. 18, 2019); Fla. Adm. Register (*available at* https://www.flrules.org/BigDoc/View_Section.asp?Issue=2972&Section=2 (last visited Oct. 18, 2019).

[11] Fla. Dep't of Ag. & Cons. Servs, *Proposed Rules for the State Hemp Program:  Public Comment Period* (available at https://www.fdacs.gov/Cannabis/Hemp-CBD-in-Florida (last visited Oct. 18, 2019).

[12] *Id.*

[13] § 500.01-501.90 is the *Florida Food Safety Act*, § 500.01, Fla. Stat. *et seq.*

[14] § 581.217(7), Fla. Stat. (2019) (providing for distribution and retail sale of hemp extract and regulating label by providing for scannable QR Code linked to certificate of analysis from independent testing laboratory, batch number, and "number of milligrams of hemp extract").

[15] Rule 5K-4002(1)(d) adopts as the law of Florida those Rules promulgated at 21 C.F.R. § 101 (with exceptions not applicable here).  § 5K-4.002(1)(d), Fla. Admin. Code.

[16] U.S. Food & Drug Admin., *Scientific Data and Information About Products Containing Cannabis or Cannabis-Derived Compounds; Public Hearing; Request for Comments*, 84 FR 12969 (Apr. 3, 2019).

[17] 2019 Legis. Bill Hist., U.S. S.B. 2522, 2019 Legis. Bill Hist. (2019) ("Within 90 days of enactment of this act, the FDA shall provide the Committee with a report regarding the agency's progress toward obtaining and analyzing data to help determine a policy of enforcement discretion

17

regulation and guidance is underway in both Florida and at the federal level.[18]

B.     **All Factors Weigh in Favor of Staying this Action.**

The governing factors include: "(1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; (2) whether a stay will simplify the issues and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Coatney v. Synchrony Bank*, No. 6:16-cv-389, 2016 WL 4506315, at *1 (M.D. Fla. Aug. 2, 2016) (citations and quotations omitted).

"To apply these principles to the appropriateness of a stay when the interaction between regulatory schemes promulgated by administrative agencies and their application by the judiciary is at issue, courts have devised a four-pronged test" for the "primary jurisdiction doctrine." *See Comp. Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, No. 16-cv-80967, 2017 WL 4868185, at *2 (S.D. Fla. Oct. 6, 2017). The primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). "There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Comprehensive Health Care,* 2017 WL 4868185, at *2 (*quoting Bondhus v. Henry Schein*, No. 14-22982-CIV, 2015 WL 1968841, at *2-*3 (S.D. Fla. Apr. 30, 2015)). Under this standard, a court "may stay an action pending resolution of an issue that falls

---

and the process in which CBD meeting the definition of hemp will be evaluated for use in products. Within 120 days of enactment of this act, the FDA shall issue a policy of enforcement discretion with regard to current products containing CBD meeting the definition of hemp as defined by section 297A of the Agricultural Marketing Act of 1964"); AGRICULTURE, RURAL DEVELOPMENT, FOOD AND DRUG ADMINISTRATION, AND RELATED AGENCIES APPROPRIATIONS BILL, 2020, 116 S. Rpt. 110, at 39-40 (Sept. 2019).

[18] Not to be outdone, Ohio, where Plaintiff Terry resides, has also legalized industrial hemp and the Ohio Department of Agriculture is undergoing ongoing rulemaking to implement the Act. *See* Ohio Rev. Code Ann. § 928.03 (2019) ("The director of agriculture, in consultation with the governor and attorney general, shall adopt rules in accordance with Chapter 119 of the Revised Code establishing standards and procedures for the regulation of hemp cultivation and processing"); Ohio Dep't of Agriculture, *Hemp Is Now Legal* (available at https://agri.ohio.gov/wps/portal/gov/oda/divisions/administration/resources/hemp-facts3 (last visited October 19, 2019)).

18

within the special competence of an administrative agency." *Beach TV Cable Co., Inc. v. Comcast of Fla./Ga.*, 808 F.3d 1284, 1288 (11th Cir. 2015); *see also Coatney*, 2016 WL 4506315, at *2 (staying case). "The four factors are not exclusive and courts seem heavily influenced by a fifth factor: whether the [agency] has shown any interest in the issues presented by the litigants." *Greenfield*, 18 F. Supp.3d at 1375-76 (granting stay of FDUTPA class action on evaporated cane juice in avocados where FDA planned to "to provide final guidance").

*First*, the central issue in this case is implicated by the FDCA's regulatory regime and the FDA's forthcoming interpretive guidance.  Plaintiffs assert that the actual CBD amount -- which they concede is "naturally occurring" (Compl., ¶ 3) -- must match the label exactly, while Green Roads maintains that the CBD bottle is not misbranded so long as the CBD content is at least 80% of "the value for that nutrient declared on the label."  Thus, the FDCA's rulemaking and the FDA's forthcoming guidance will likely be dispositive.  Even if the guidance and rulemaking is not dispositive, a stay is appropriate because "the Court will inevitably benefit from the [administrative] guidance in this case." *Comprehensive Health*, 2017 WL 4868185, at *2.  "The need for consistent guidance is underscored by the increasing volume of this type of litigation and the concomitant potential for inconsistent judicial rulings." *Greenfield*, 18 F. Supp.3d at 1376 (staying FDUTPA class action where "[t]he need for consistent guidance is underscored by the increasing volume of this type of litigation and the concomitant potential for inconsistent judicial rulings").  The Court can take judicial notice that in the Southern District of Florida alone at least two other CBD class actions have been filed in the past three months.[19] *Skybolt Aeromotive Corp. v. Milspec Prods.*, No. 5:16-cv-616-oc-PRL, 2017 U.S. Dist. LEXIS 88597, at *29 (M.D. Fla. Jun. 9, 2017) (granting stay to promote "uniformity" and "consistency" based on primary jurisdiction).

*Second*, the issue has been placed within the jurisdiction of an administrative agency having regulatory authority.  The FDCA vests the FDA with authority to prescribe regulations to implement the requirements of the statute.  21 U.S.C. § 371.  Accordingly, the second factor for primary jurisdiction has been met.

*Third*, the FDACS and FDA's actions are both pursuant to a statute that subjects an industry to a comprehensive regulatory scheme that requires both expertise and uniformity in administration.  As the FDA's Acting Commissioner recently commented: "The regulation of a

---

[19] *Gaddis v. Just Brands USA, Inc., et al*, No. 0:19-cv-62067-RS (S.D. Fla. Aug. 16, 2019); *Potter v. Potnetwork Holdings, Inc., et al*, No. 1:19-cv-24017-RNS (S.D. Fla. Sept. 27, 2019).

product like CBD is complex and touches almost every aspect of FDA's authority."[20]  Where, as here, the resolution of Plaintiffs' cause of action would require interpreting and considering technical terms and industry policies, this is within their field of experience.

*Fourth*, Plaintiffs will not be unduly prejudiced by waiting until the FDACS and FDA issues their regulations and guidance.  Plaintiffs dallied five and six months, respectively, to file this action after their purported purchases.  Compl., ¶¶ 40, 43.  The case is in the earliest stages of litigation, and has not yet been set for trial.  There is no reason for the parties to waste resources and time in engaging in discovery because the need for discovery may be entirely unnecessary or greatly reduced when the FDACS and FDA issue their interpretations on an issue likely to be dispositive in this case.  *Herazo*, 2015 U.S. Dist. LEXIS 96811, at *13-*14 (granting stay of FDUTPA class action for misbranding of homeopathic products given FDA expertise).  There is every reason to believe that the FDACS and FDA will act expeditiously.[21]

*Fifth*, a stay will certainly simplify the issues and streamline a trial, should one take place.  As explained above, the issue of whether the labeling of CBD – a naturally occurring (indigenous) nutrient -- is subject to the 80% safe harbor is likely dispositive.  Further guidance would impact the adjudication of any summary judgment motion and, prior to that, simplify issues for the parties and Court in both fact discovery and expert discovery.

*Finally*, a stay would not be immoderate as the Court may order periodic status reports, and monitor whether a temporary stay occasions undue delay.

## VII.   CONCLUSION

Thus, the Court should dismiss the Class Action Complaint for failure to state a claim and lack of subject matter jurisdiction.  Alternatively, this Court should stay this case pending the FDACS's and FDA's interpretive CBD guidance.  Plaintiffs, who waited at least five and six months to file their claims after their claimed purchase, will not be prejudiced.  A stay will also promote uniformity and consistency in the application of FDA labeling standards.

---

[20] *See* Food & Drug Admin., *FDA Acting Commissioner's Remarks to the 2019 FDLI Annual Conference*, at 4 (May 2, 2019) (available at https://www.fda.gov/news-events/speeches-fda-officials/fda-acting-commissioners-remarks-2019-fdli-annual-conference-05022019 (last visited Oct. 18, 2019).

[21] Jacob Ogles, *Florida hemp rules ready for final review*, Fla. Pol. (Oct. 21, 2019) (*available at* https://floridapolitics.com/archives/309061-florida-hemp-rules-ready-for-final-review) (last visited Oct. 23, 2019) ("It's been a high priority for Agriculture Commissioner Nikki Fried to get a final draft out [of Florida hemp rules] and hemp seeds in Florida soil as soon as possible").

Respectfully submitted,

***Attorneys for Defendant GREEN ROADS OF FLORIDA LLC***

GREENBERG TRAURIG, P.A.
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Telephone:  954-765-0500
Facsimile:  954-765-1477

By*:*   */s/ John L. McManus*
      Kenneth A. Horky, Esquire
      Florida Bar No. 691194
      Email: horkyk@gtlaw.com;
      geistc@gtlaw.com
      John L. McManus, Esquire
      Florida Bar No. 0119423
      Email:  mcmanusj@gtlaw.com;
      yeargina@gtlaw.com; and
      FLService@gtlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed in CM/ECF on this 25th day of October 2019, which will generate Notices of Electronic Filing to all parties that have signed up for CM/ECF.

      */s/ John L. McManus*
      JOHN L. MCMANUS

21